UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH PECK,<br>    PLAINTIFF, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. |
| | :   3:04-cv-1139 (JCH) |
| AETNA LIFE INSURANCE<br>COMPANY,<br>    DEFENDANT. | :<br>:   July 19, 2005<br>: |

**RULING ON DEFENDANT'S MOTION TO DISMISS [DKT. NO. 17] COUNTS II & III AND MOTION TO STRIKE CERTAIN PARAGRAPHS OF THE AMENDED COMPLAINT**

Plaintiff Elizabeth Peck brings this action pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. In Count I, Peck alleges that defendant Aetna Life Insurance Company ("Aetna") wrongfully terminated Peck's long-term disability benefits. In Counts II and III, Peck alleges, on her behalf and on the behalf of others similarly situated (the "Class"), that Aetna wrongfully withheld long-term disability benefit payments to Peck and the putative Class by failing to pay Peck and the Class for their entire "period of disability." Aetna brings this motion to dismiss Counts II and III of Peck's Amended Complaint [Dkt. No. 11] for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7 of the Local Rules of Civil Procedure of the District of Connecticut. Aetna also moves to strike paragraphs 2, 4, 21, 22, and 34 through 45 of the Amended Complaint pursuant to Fed. R. Civ. P. 12(f), and Peck's jury demand.[1] For the reasons that follow, Aetna's partial motion to dismiss is denied, but its motion to strike Peck's

---

[1] Aetna concedes that the factual record must be more developed prior to any decision on the merits of Count I. See Def's Mem. Supp. Mot. Dismiss at 2 n.3. Thus, this ruling does not address Count I.

jury demand is granted.

**I.     BACKGROUND**[2]

Elizabeth Peck is a citizen of New York and was an employee of the North Shore-Long Island Jewish Health System ("North Shore").  See Am. Compl. at ¶¶ 8, 11.  Aetna is a wholly-owned subsidiary of Aetna Inc. and purports to be a national leader in healthcare, dental, pharmacy group, life, disability and long-term insurance and employee benefits.  See id. at ¶ 20.  North Shore obtained a long-term disability income policy[3] from Aetna (the "Policy") on or about January 2001.  See id. at ¶ 9.

The Policy states, *inter alia*, that eligible employees of North Shore would receive disability insurance payments in the event they became disabled due to injury or sickness.  See id. at ¶ 12.  Peck became disabled on or about September 21, 2000, while employed at North Shore, and is considered eligible for benefits under the Policy.  See id. at ¶ 13.  Peck complied with all relevant terms and conditions of the Policy, filed a claim, and provided proper proof of loss.  See id. at ¶¶ 14-15.  Aetna acknowledged Peck's date of disability as September 21, 2000.  See id. at ¶ 15.

The Policy contains a waiting period, a "length of time during a period of total disability that must pass before benefits start."  See id. at ¶ 25 (quoting the Policy at B-11).  Due to the Policy's waiting period, Peck did not immediately receive long-term disability payments.  Peck's waiting period lasted from September 21, 2000 until March

---

[2]The court takes the facts alleged in Peck's Amended Complaint as true, as it must, and draws all inferences in Peck's favor.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984).

[3]Neither party disputes the fact that the policy in question is an employee welfare benefit plan within the meaning of 29 U.S.C. §§ 1002(3) and 1002(2)(A) and is governed by ERISA.

20, 2001 (the "Waiting Period").  However, immediately after Peck became disabled, she began collecting weekly short-term disability benefits in the amount of $768.75.  See id. at ¶ 16.  These benefits lasted from September 28, 2000 through March 28, 2001.  See id.  Peck applied for long-term disability benefits on March 19, 2001, was approved on June 25, 2001, and was paid long-term disability benefits from March 20, 2001 through July 30, 2001 in the amount of $3,331.27 per month.  See id. at ¶ 17.  These payments did not include any money attributable to the period of time that constituted the Waiting Period.  See id. at ¶ 18.

The Policy states "[t]his Plan will pay a Monthly Benefit for a period of total disability caused by disease or accidental bodily injury.  There is a waiting period. (That is the length of time during a period of total disability that must pass before benefits start)."  Am. Compl., Ex. A (Summary Plan Description and Plan) at B-11 ("Ex. A").  The Waiting Period consists of "[t]he first 180 days of a period of total disability."  Ex. A at B-9.  "A period of total disability starts on the first day you are totally disabled as a direct result of a significant change in your physical or mental condition occurring while you are insured under this Plan."  Id. at B-12.  Pursuant to the terms of the Policy, "[a]ny benefit actually payable may be reduced by 'other income benefits.'"  Id. at B-9.  "Other Income Benefits" include, *inter alia*, "[d]isability, retirement, or unemployment benefits required or provided for under any law of a government."  Id. at B-14.

On July 31, 2001, Aetna notified Peck that it was terminating the payment of long-term disability benefits.  See id. at ¶ 19.  Peck appealed Aetna's decision to terminate benefits on or about January 2, 2002.  See id. at ¶ 60.  Aetna upheld its decision on or about April 3, 2002.  See id.  It does not appear from the complaint that

-3-

Peck raised the issue of non-payment of benefits accumulated during the Waiting Period as part of her appeal. However, Peck alleges that she has exhausted her administrative remedies as to Counts II and III because any appeal on these issues would be futile due to Aetna's alleged policy of refusing to pay long-term benefits for the period of time constituting a waiting period under the Policy. See id. at ¶¶ 35-38, 42.

Peck filed her Amended Complaint on behalf of herself and others similarly situated. Peck argues that the Policy requires a beneficiary to satisfy the 180-day waiting period before Aetna must begin paying benefits, but that benefits accrue during that period of time, and "are payable after the waiting period ends for as long as the period of total disability continues." Id. at ¶¶ 29-30 (emphasis in original) (quotation marks omitted) (quoting Ex. A at B-12). That is, Aetna is obligated by the terms of the Policy to pay benefits for the time elapsing both during *and* after the Waiting Period. Peck also demands a jury trial on each count.

Aetna moved to dismiss Counts II and III and moved to strike selected other paragraphs of the Amended Complaint. Aetna argues that Peck failed to exhaust her administrative remedies with respect to the allegations contained in Counts II and III. It also argues that the Policy, by its express terms, provides for a waiting period during which benefits do not accrue. Therefore, Aetna has not failed to pay any benefits for which it is liable. To the extent the Policy is unclear, Aetna argues, its own interpretation of the Policy's terms must be reviewed using the "arbitrary and capricious" standard and upheld as reasonable. Additionally, Aetna argues that paragraphs 2, 4, 21, 22, and 34 through 45 must be stricken from the Amended Complaint because they are class action allegations, and the class action claims in Counts II and III must be

dismissed.  Finally, Aetna argues that Peck's jury demand must be stricken because plaintiffs in ERISA cases do not have a right to a jury trial.

## II.     STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Reed v. Town of Branford, 949 F. Supp. 87, 89 (D. Conn. 1996).  In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984).

A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation omitted).  "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light most favorable to the non-moving party."  Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996).  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).  Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema

N.A., 534 U.S. 506, 512 (2002).

### III. DISCUSSION

#### A. Exhaustion of Remedies

A plaintiff bringing an ERISA claim must first exhaust her "administrative remedies for the denial of ERISA benefits." Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 107 (2d Cir. 2003). "Where a claimant fails to appeal a denial of benefits under an employee plan within the prescribed time limit, the court will generally not reach the merits of her claim." Id. An exception to this rule exists where the plaintiff can make a "'clear and positive showing' that pursuing available administrative remedies would be futile . . . ." Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993). Aetna argues that Peck fails to make such a "clear and positive showing."

However, Peck has alleged that Aetna has a "fixed company-wide policy," Am. Compl. at ¶ 38, and that this policy is "a policy of failing to pay for benefits that accumulate[ ] during the Waiting Period." Id. at ¶ 37. Therefore, Peck alleges, it would be futile for Peck to pursue administrative remedies with Aetna. See id. at ¶ 42. This is all that is required under the notice pleading standard employed by the federal courts. See Swierkiewicz, 534 U.S. at 512. It may well be that Peck cannot produce the requisite facts to make a "clear and positive showing" upon the conclusion of a period of discovery. Such an eventuality is properly dealt with in a motion for summary judgment. See id. at 514. Aetna's motion to dismiss Counts II and III for failure to exhaust administrative remedies is denied.

**B.     Jury Demand**

Second Circuit precedent is clear on the issue of jury demands in ERISA cases. "[T]here is no right to a jury trial in a suit brought to recover ERISA benefits." Sullivan v. LTV Aerospace & Def. Co., 82 F.3d 1251, 1258 (2d Cir. 1996); see also DeFelice v. Am. Int'l Life Assurance Co. of New York, 112 F.3d 61, 64 (2d Cir. 1997). This is so because suits "involving ERISA benefits are inherently equitable in nature, not contractual . . . ." DeFelice, 112 F.3d at 64. However, Peck argues that under Great-West Life & Annuity Ins. Co. V. Knudson, 534 U.S. 204 (2002), this rule has changed.

In Great-West, 534 U.S. at 208-09, the insurance company that insured an ERISA plan, and hence acted as a fiduciary of the plan, brought suit pursuant to section 502(a)(3) of ERISA in an attempt to enforce a reimbursement provision in that plan through injunctive and declaratory relief. The Supreme Court held that the insurance company's suit was essentially a suit to "enforce a contractual obligation to pay money past due," id. at 212, and that such suits are suits at law that cannot be maintained by fiduciaries under the explicit terms of section 502(a)(3). See id. at 221. In doing so, the Supreme Court noted that, unlike section 502(a)(3), section 502(a)(1)(B) authorizes "'a participant or beneficiary' to bring a civil action 'to enforce his rights under the terms of the plan,' without reference to whether the relief sought is legal or equitable." Id.

Peck argues that Great-West, while it did not directly address the issue of jury trials in ERISA cases, will compel the Second Circuit to depart from its holdings in Sullivan and DeFelice and hold that actions such as this one are legal in nature and therefore give rise to a right to a jury trial for the plaintiff. See Pl's Mem. Opp. Mot. to Dismiss at 17. This may be so. However, it is not this court's prerogative to ignore

-7-

Second Circuit precedent that is directly on point in an effort to correctly guess how that court will react to new language found in a Supreme Court case ruling on a similar, but not identical, issue.  See, e.g., United States v. Quinones, 313 F.3d 49, 69 (2d Cir. 2002) (noting that a court of appeals must follow Supreme Court precedent that is directly on point, unless and until the Court reinterprets its own binding precedent). Therefore, the court will follow the binding Second Circuit precedent found in Sullivan and DeFelice until the Second Circuit instructs otherwise.  Aetna's motion to strike Peck's jury demand is granted.

        C.       **Terms of the Policy – Standard of Review**

A challenge to the denial of benefits under section 502(a)(1)(B) is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan gives discretion to the administrator or fiduciary, a court will review the decisions of that administrator or fiduciary using the "arbitrary and capricious standard."  See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).  Under this standard of review, a court may overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Id. at 442.  In other words, an administrator's interpretation of a plan "'will not be disturbed if reasonable.'"  Sullivan, 82 F.3d at 1255 (quoting Firestone, 489 U.S. at 111).  This is true even if the plan administrator is operating under a conflict of interest, although such a "conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  Firestone, 489 U.S. at 115 (citation omitted).  Of course, if the plan's

-8-

language is clear and unambiguous, "*de novo* review is appropriate because unambiguous language leaves no room for the exercise of discretion." O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc., 37 F.3d 55, 59 (2d Cir. 1994).

In this case, the Summary Plan Description ("SPD") gives Aetna discretion to interpret the terms of the Policy. See Ex. A at 74. The SPD explicitly states:

> The Plan Administrator, its delegate, the designated Claims Administrator or the insurance carrier, as the case may be, has the discretionary authority and responsibility to interpret, construe and make determination [sic] under the applicable coverage option. All interpretations, constructions and determinations made by the such [sic] parties shall be final and binding on all persons, unless found by a court of competent jurisdiction to be arbitrary and capricious.

Id. Thus, the court must examine Aetna's interpretations and constructions of the terms of the Policy using the arbitrary and capricious standard. See Pagan, 52 F.3d at 441.

In Sullivan, 82 F.3d at 1255, the Second Circuit created a two-part "test for determining whether the administrator's interpretation of [a] plan is arbitrary and capricious" where a plan administrator is "shown to have a conflict of interest . . . ." First, the court must decide whether the "determination made by the administrator is reasonable, in light of possible competing interpretations of the plan . . . ." Id. Second, the court must determine if "the evidence shows that the administrator was in fact influenced by such conflict." Id. at 1255-56. If so, "the deference otherwise accorded the administrator's decision drops away and the court interprets the plan *de novo*." Id. at 1256.

In this case, Peck points out that "Aetna is not merely an administrator but the party obligated to pay any benefit awarded under the Plan . . . ." Pl's Mem. Opp. Mot. to Dismiss at 11; see also, e.g., Am. Compl. at ¶¶ 55, 60 (referring to Aetna as both the

party responsible for decision-making and making disability payments under the Policy). Therefore, Peck alleges, Aetna may have suffered from a conflict of interest that requires the court to review its decisions using the *de novo* standard of review.  See id. Aetna does not dispute the basic allegation that it has a dual role under the Policy in its reply memorandum.  See Def's Reply Mem. Supp. Mot. to Dismiss at 5 (noting Aetna's status as both the insurer and Claims Administrator).  Instead, Aetna directs the court to Whitney v. Empire Blue Cross & Blue Shield, 106 F.3d 475 (2d Cir. 1997), for the proposition that a plaintiff must present evidence of a conflict of interest greater than merely the "inherent" conflict of interest, when an insurer both administers a plan and is responsible for its benefits payments, in order to justify lowering the standard to *de novo* review.  See Def's Reply Mem. Supp. Mot. to Dismiss at 6-7.

     Aetna is correct that the evidence must show that a conflict of interest exerted actual influence over an administrator's decision-making and was not merely the "inherent conflict" of an insurer playing dual roles under a plan, in order for the court to examine the administrator's decisions *de novo*.  See Whitney, 106 F.3d at 477. However, in order for Peck to present such evidence, she must be given the opportunity to collect evidence.  This is the function of discovery.  Under the federal courts' notice pleading regime, Peck must merely provide the court with "a short and plain statement of the claim showing that the [she] is entitled to relief."  Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz, 534 U.S. at 512.  This Peck has done.

     Whitney does not require a different conclusion.  That case came before the Second Circuit following a bench trial before the district court.  See Whitney, 106 F.3d at 476.  The Second Circuit concluded that the district court had incorrectly applied a

-10-


reduced standard of review when reviewing the decisions made by a conflicted administrator based on evidence showing only that the administrator suffered the "inherent conflict" described *supra*. See id. at 477. Therefore, the Second Circuit vacated the district court's judgment and remanded the case so that the district court could apply the correct standard of review to the facts of the case as they were presented at trial. See id. at 477-78.

In order to decide the claims raised by Counts II and III, the court must know which standard of review is appropriate in this situation. This requires development of the record through discovery. Summary judgment pursuant to Fed. R. Civ. P. 56, following a reasonable period of discovery, will provide the parties with a sufficient tool to dispose of any unmeritorious claims. See Swierkiewicz, 534 U.S. at 512. Therefore, Aetna's motion to dismiss Counts II and III and to strike paragraphs 2, 4, 21, 22, and 34 through 45 of the Amended Complaint is denied.

## IV.    CONCLUSION

For the foregoing reasons, Aetna's motion to dismiss Counts II and III, and to strike paragraphs 2, 4, 21, 22, and 34 through 45, of the Amended Complaint [Dkt. No. 17] is **DENIED**. Aetna's motion to strike Peck's jury demand is **GRANTED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 19th day of July, 2005.

        /s/Janet C.Hall_____
        Janet C. Hall
        United States District Judge