UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIZABETH PECK, | : | |
|     PLAINTIFF, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:04-cv-1139 (JCH) |
| AETNA LIFE INSURANCE | : | |
| COMPANY, | : | December 14, 2006 |
|     DEFENDANT. | : | |

**RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. NO. 69] AND MOTIONS TO STRIKE [DOC. NOS. 82 & 85], AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND TO STRIKE [DOC. NO. 73 &78] AND MOTION TO CERTIFY CLASS [DOC. NO. 86]**

Plaintiff Elizabeth Peck brings this action pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. In Count I, Peck alleges that defendant Aetna Life Insurance Company ("Aetna") wrongfully terminated Peck's long-term disability benefits. In Counts II and III, Peck alleges, on her behalf and on the behalf of others similarly situated (the "Class"), that Aetna wrongfully withheld long-term disability benefit payments to Peck and the putative Class by failing to pay Peck and the Class for their entire "period of disability."

Aetna brings this motion for summary judgment on Counts II and III of Peck's Amended Complaint [Doc. No. 69] pursuant to Rule 56 of the Federal Rules of Civil Procedure. In addition, Aetna has brought two motions to strike Peck's Statement of Material Facts (Doc. No. 82). Peck brings a cross-motion for summary judgment on Counts II and III and a motion to strike one of Aetna's affidavits submitted in support of summary judgment (Doc. No. 73 & 78). Peck also brings a motion for class certification on the allegations set forth in Counts II and II of the Amended Complaint (Doc. No. 86)

pursuant to Rule 23 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the court grants Aetna's motion for partial summary judgment on Counts II and III. The court denies the remaining motions brought by the parties.

## I.   STANDARD OF REVIEW

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

II.     FACTS[1]

Elizabeth Peck is a citizen of New York and was an employee of the North Shore-Long Island Jewish Health System ("North Shore").  Aetna is a wholly-owned subsidiary of Aetna Inc. and purports to be a national leader in healthcare, dental, pharmacy group, life, disability and long-term insurance and employee benefits.  North Shore obtained a long-term disability income policy[2] from Aetna (the "Policy") on or about January 2001.

The Policy states, *inter alia*, that eligible employees of North Shore would receive disability insurance payments in the event they became disabled due to injury or sickness.  Peck became disabled on or about September 21, 2000, while employed at North Shore, and is considered eligible for benefits under the Policy.  Peck complied with all relevant terms and conditions of the Policy, filed a claim, and provided proper proof of loss.  Aetna acknowledged Peck's date of disability as September 21, 2000.

The Policy contains a waiting period, a "length of time during a period of total disability that must pass before benefits start."  Policy at B-11.  Due to the Policy's waiting period, Peck did not immediately receive long-term disability payments.  Peck's waiting period lasted from September 21, 2000 until March 20, 2001 (the "Waiting Period").  However, immediately after Peck became disabled, she began collecting weekly short-term disability benefits in the amount of $768.75.  These benefits lasted

---

[1]For the purposes of Aetna's motion for partial summary judgment, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of Peck where she provides evidence to support their allegations.

[2]Neither party disputes the fact that the policy in question is an employee welfare benefit plan within the meaning of 29 U.S.C. §§ 1002(3) and 1002(2)(A) and is governed by ERISA.

from September 28, 2000 through March 28, 2001.  Peck applied for long-term disability benefits on March 19, 2001, was approved on June 25, 2001, and was paid long-term disability benefits from March 20, 2001 through July 30, 2001, in the amount of $3,331.27 per month.  These payments did not include any money attributable to the period of time that constituted the Waiting Period.

The Policy states, "This Plan will pay a Monthly Benefit for a period of total disability caused by disease or accidental bodily injury.  There is a waiting period. (That is the length of time during a period of total disability that must pass before benefits start)."  Summary Plan Description and Plan at B-11 ("Ex. A").  The Waiting Period consists of "[t]he first 180 days of a period of total disability."  Ex. A at B-9.  "A period of total disability starts on the first day you are totally disabled as a direct result of a significant change in your physical or mental condition occurring while you are insured under this Plan."  Id. at B-12.  Pursuant to the terms of the Policy, "[a]ny benefit actually payable may be reduced by 'other income benefits.'"  Id. at B-9.  "Other Income Benefits" include, *inter alia*, "[d]isability, retirement, or unemployment benefits required or provided for under any law of a government."  Id. at B-14.

On July 31, 2001, Aetna notified Peck that it was terminating the payment of long-term disability benefits.  Peck appealed Aetna's decision to terminate benefits on or about January 2, 2002.  Aetna upheld its decision on or about April 3, 2002.  Peck did not raise the specific issue of non-payment of benefits accumulated during the Waiting Period as part of her appeal.

4

**III.	DISCUSSION**

A plaintiff bringing an ERISA claim must first exhaust her "administrative remedies for the denial of ERISA benefits." Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 107 (2d Cir. 2003). As it has developed in this Circuit, the exhaustion requirement is primarily intended to: "1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; 2) provide a sufficiently clear record of administrative action if litigation should ensue; and 3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." Davenport v. Abrams, 249 F.3d 130, 133 (2d Cir. 2001) (citing Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993). Another set of justifications for the exhaustion requirement are to "help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Kennedy, 989 F.2d at 594 (citing Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980).

Because of the important federal policies underlying the exhaustion requirement, claimants who fail to appeal the denial of their benefits under an employee plan will generally not have their claims heard in federal court. Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 107 (2d Cir. 2003); see also Alfarone v. Bernie Wolff Constr., 788 F.2d 76, 79 (2d Cir. 1986). However, this Circuit recognizes that the purposes of the exhaustion requirement are not always served by requiring a litigant to pursue available administrative remedies. A court may release a claimant from the exhaustion

requirement if that claimant can make a "clear and positive showing' that pursuing available administrative remedies would be futile." Kennedy, 989 F.2d at 594.

Aetna contends that Peck never exhausted her claims for the waiting period benefits and that she fails to make a "clear and positive showing" that presenting those claims would have been futile. Peck first counters that she exhausted her claims in Count II and III by submitting a timely appeal of Aetna's initial adverse benefits determination. As mentioned above, Aetna's initial adverse benefits determination is the subject of Count I. According to Peck, her claim for long term benefits eligibility is "one and the same" as her claim for benefits accrued during the plan's waiting period. Pl. Opp. at 36.

The court rejects Peck's assertion. Peck's claim in Count I of the Amended Complaint is concerned with whether she is entitled to any benefits under the plan. Her claims in Counts II and III, however, address the amount of benefits to which Peck would be entitled were she able to prove eligibility. Put another way, while Peck's claim that she is entitled to waiting period benefits would necessarily include a claim that she is eligible for those benefits, her claim that she is eligible for benefits does not necessarily include a claim that she is entitled to waiting period benefits. Had Peck prevailed on her appeal for eligibility, Aetna presumably would have, or reasonably could have, reinstated her benefits at their pre-termination level since Aetna would not have been on notice that Peck also disputed the level at which her benefits were previously paid. For this reason, the court finds that Peck did not exhaust her waiting period claims.

Peck next asserts that resort to the administrative appeals process would have

6

been futile because Aetna has a "vigorous and fixed plan for not paying benefits that accrue during the waiting period." Pl. Opp. at 37. Peck supports this argument by marshaling a number of statements by Aetna agents made during the course of this litigation. Those statements tend to demonstrate that Aetna, as a matter of policy, has never paid waiting period benefits. Id.

As a preliminary matter, Peck cannot rely on statements made by Aetna representatives since the "defendant['s] position in [a] lawsuit does not establish futility." Davenport v. Abrams, Henry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001). If the opposite were true, plaintiffs could completely undermine the purposes of exhaustion by simply "bypass[ing] administrative remedies, fil[ing] suit, and then hop[ing] for subsequent events to justify futility claims." Communications Workers of Am. v. AT & T, 40 F.3d 426, 433 n. 1 (D.C. Cir. 1994) (cited approvingly in Davenport, 249 F.3d at 134).

Assuming, *arguendo*, that Aetna does have a fixed policy against awarding waiting period benefits, Peck has still not satisfied the requirements for futility. Most fatal to her claim is the fact that, not only did Peck fail to appeal her waiting period claim, she never even made a request for waiting period benefits. The futility exception is premised on a claimant having at least made "an unambiguous application for benefits" and received "a formal or informal administrative decision denying benefits." Barnett v. Int'l Bus. Mach. Corp., 885 F.Supp. 581, 588 (S.D.N.Y. 1995). This principle applies even where the defendant has a fixed policy of denying certain claims and the claimant can show that her claim would have been denied "no matter how hard she tried." Berger v. Edgewater Steel Co., 911 F.2d 911, 917 (3rd Cir. 1990) (cited in Pl.

7

Opp. at 37). A "*de facto* denial" simply does not "satisfy the futility exception to the exhaustion requirement." Barnett, 885 F.Supp. at 589.[3]

Peck's final contention for waiving the exhaustion requirement is that Aetna never notified her that it was denying her claim for benefits accrued during the waiting period. In Peck's view, Aetna's failure to specify that it was denying her waiting period benefits waives exhaustion because it prevented her from perfecting her claim. Pl. Opp. at 38 (citing Glynn v. Bankers Life & Cas. Co., 2005 WL 4014448 (D.Conn. 2005). Peck's argument presents something of a "chicken or the egg" problem: Peck contends that she could not properly challenge Aetna's denial of waiting period benefits because she did not receive adequate notice of the denial, and Aetna argues that it could not give Peck adequate notice because Peck never requested waiting period benefits. However, to the extend that this court has ruled that Peck should have made a specific request for waiting period benefits, her notice argument is without merit.

Because Peck did not exhaust her claims for waiting period benefits and cannot make the necessary showing of futility or improper notice for the court to excuse her

---

[3]An additional reason for requiring a claimant to request and be denied the benefit sought is evidenced by one of Peck's primary arguments for why this court should review Aetna's interpretation of the plan language at issue *de novo*. According to Peck, this court should not defer to Aetna's construction of the plan because Aetna's failure to pay waiting period benefits was a "ministerial act" conducted by a computer program that involved no discretion by Aetna. Pl. Opp. at 10. While the court expresses no opinion as to what standard of review would have been appropriate, it does note that, in a very real sense, Peck's own failure to request waiting period benefits prevented Aetna from exercising any discretion as to whether she was entitled to waiting period benefits. Had Peck requested waiting period benefits, Aetna would have had to either grant her request or give "[s]pecific reasons for the denial; [and provide] specific reference to the pertinent plan provisions on which the denial is based." 29 C.F.R. § 2560.503-1(g)(i)-(ii) [1984]. A serious question of equity would arise if Peck could prove futility without having made a request for the benefits in question, then obtain *de novo* review of the relevant plan provisions by virtue of the same failure to present her claim to the plan administrator. Peck cannot have it both ways.

from the exhaustion requirement, the court GRANTS Aetna's Motion for Summary Judgment (Doc. No. 69). Aetna's Motions to Strike (Doc. Nos. 82 & 85) are DENIED as moot. Peck's Cross-Motion for Summary Judgment (Doc. No. 73) is DENIED. Peck's Motion to Strike (Doc. No. 78) is DENIED as moot, as the court did not rely on the Affidavit of Donn Haber in this Ruling. Furthermore, because Peck moves for class certification on the claims for waiting period benefits contained in Counts II and III, this motion (Doc. No. 86) is also DENIED as moot.

### IV.   CONCLUSION

For the foregoing reasons, Aetna's Motion for Summary Judgment (Doc. No. 69) is GRANTED. All other motions (Doc. Nos. 73, 78, 82, 85, & 86) are DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 14th day of December, 2006.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge