**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ELIZABETH PECK, | : | |
| PLAINTIFF, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:04-cv-1139 (JCH) |
| AETNA LIFE INSURANCE | : | |
| COMPANY, | : | June 1, 2007 |
| DEFENDANT. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 117],**
**DEFENDANT'S MOTION TO SEAL (Doc. No. 119), AND PLAINTIFF'S CROSS**
**MOTION FOR SUMMARY JUDGMENT [DOC. NO. 130]**

Plaintiff Elizabeth Peck has brought this action pursuant to section 502(a)(1)(B)

of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, alleging

that defendant Aetna Life Insurance Company ("Aetna") wrongfully denied her long-

term disability benefits. Both Peck and Aetna have moved for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure (Doc. Nos. 130 & 117).

Aetna has also moved to file under seal certain of its exhibits in support of summary

judgment, pursuant to District of Connecticut Local Rule of Civil Procedure 5(e) (Doc.

No. 119).

Aetna's Motion for Summary Judgment (Doc. No. 117) is denied. Peck's Motion

for Summary Judgment (Doc. No. 130) is granted. Aetna's Motion to Seal (Doc. No.

119) is granted. However, Aetna is ordered to file a redacted version of the documents

removing personal identifying information by June 8, 2007.

**I.    STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II.    BACKGROUND

Elizabeth Peck is a citizen of New York and was an operating room nurse with the North Shore-Long Island Jewish Health System ("North Shore"). Aetna is a wholly-owned subsidiary of Aetna Inc. and purports to be a national leader in healthcare, dental, pharmacy group, life, disability and long-term insurance and employee benefits. North Shore obtained a long-term disability income policy[1] from Aetna (the "Policy") on or about January 2001.

---

[1] Neither party disputes the fact that the policy in question is an employee welfare benefit plan within the meaning of 29 U.S.C. §§ 1002(3) and 1002(2)(A) and is governed by ERISA.

The Aetna long-term disability policy (the "Policy") at issue is an employee benefit plan within the meaning of ERISA. Aetna is the claims administrator as well as the insurer under the plan. The Summary Plan Description ("SDP") and Policy provide that the plan at issue "will pay a Monthly Benefit for a period of total disability caused by a disease or accidental bodily injury. There is a waiting period." Def. Local Rule 56(a)(1) Statement at ¶ 2[2] (quoting Summary Plan Description, Ex. A. at p. B-11). The SDP and Policy define the term "total disability" as follows:

You are deemed to be to be totally disabled while either of the following applies to you:

• During the period which ends right after the first 24 months benefits are payable in a period of disability:

You are not able, solely because of injury or disease, to perform the material duties of your own occupation . . .

• Thereafter during such period of disability:

You are not able, solely because of injury or disease, to work at any reasonable occupation

Aetna. L.R. 56(a)(1) Stat. at ¶ 6 (quoting Ex. A at p. B-11). Under the SDP and Policy, a period of total disability ends on the date the participant is no longer totally disabled. Id. at ¶ 7.

The SDP also contains the following language concerning the claims administrator's authority to determine coverage under the plan: ". . . the claims administrator . . . has the discretionary authority and responsibility to interpret, construe and make determination under the applicable coverage option. All interpretations,

---

[2]The parties' Local Rule 56 statements are hereinafter cited as L.R. 56(a)(_).

constructions and determinations . . . shall be final and binding on all persons, unless found by a court of competent jurisdiction to be arbitrary and capricious." Id. at ¶ 9 (quoting Ex. A., p. 74).

Due to an arthritic condition in her right foot, Peck became disabled on or about September 21, 2000, while employed at North Shore. Subsequently, Peck applied for and received short-term disability benefits from September 28, 2000 through March 28, 2001. Peck filed an application for long-term disability benefits with Aetna on or about March 19, 2001. On June 25, 2001, Aetna issued Peck a Long Term Disability ("LTD") benefit check in the amount of $10, 326.95. Aetna issued the check under a reservation of rights for the period of March 20, 2001 to June 30, 2001, while Aetna continued its evaluation of Peck's LTD application.

On July 31, 2001, Aetna notified Peck that it was terminating the payment of long-term disability benefits. Peck appealed Aetna's decision to terminate benefits on or about January 2, 2002. Aetna upheld its decision on or about April 3, 2002. In upholding its termination of Peck's benefits, Aetna found "that the weight of the medical information does not support a condition of total disability preventing Ms. [Peck] from performing her own occupation of a registered nurse." Def. L.R. 56(a)(1) Stat. at ¶ 21 (quoting Barry Aff., Ex. 1). Aetna further informed Peck that it determined her "own occupation" to be that of a registered nurse by reference to her "occupation as it exists in the general labor market, not [her] specific job with [her] employer." Def. L.R. 56(a)(1) Stat. at ¶ 22 (quoting Barry Aff., Ex. 1).

## III. DISCUSSION

In their cross motions for summary judgment, the parties dispute the proper

4

standard for this court's review of Aetna's decision to deny Peck's long-term benefits and the proper interpretation of "own occupation" under the SDP and Policy. The court addresses these issues in turn.

## A. ERISA STANDARD OF REVIEW

A challenge to the denial of benefits under section 502(a)(1)(B) is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If an employee benefits plan gives the plan administrator discretion to determine eligibility for benefits or to interpret the plan's terms, a reviewing court should generally review the administrator's decision using the "arbitrary and capricious standard." See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995). Under this standard of review, a court may overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. at 442. In other words, an administrator's interpretation of a plan "'will not be disturbed if reasonable.'" Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996) (quoting Firestone, 489 U.S. at 111). This is true even if the plan administrator is operating under a conflict of interest, although such a "conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115 (citation omitted).

Here, Peck does not dispute that the Policy's language grants Aetna discretionary authority to administer benefits under the Plan, nor does Peck attempt to

establish that Aetna labored under an actual conflict of interest in determining her eligibility for benefits. Instead, Peck contends that this court should conduct a *de novo* review of Aetna's denial of her benefits because: 1) Aetna's discretionary clause violates New York public policy with respect to health and disability insurance policies; and because 2) Aetna failed to render its decisions regarding Peck's eligibility within the time periods set by ERISA. The court finds that both of these arguments are without merit.

Peck bases her argument that this court should not enforce Aetna's discretionary clause on findings by the National Association of Insurance Commissioners and the New York State Insurance Department that such clauses are "unjust, unfair, inequitable, misleading, [and] deceptive." Pl. Mem. at 4-5 (citing NAIC Model Act No. 42 and NY State Ins. Dep't Circular Letter of March 27, 2006. Peck maintains that, because discretionary clauses are so offensive to public policy, Aetna's inclusion of such a clause in the Policy violates its fiduciary duty under ERISA to act solely in the interests of participants and beneficiaries. See 29 U.S.C. § 1104(A)(1). Peck does not cite to a single court interpreting ERISA in making this argument. Indeed, the absence of such case law is to be expected considering the Supreme Court's explicit endorsement of discretionary clauses in Firestone. Firestone, 489 U.S. at 114-15. The court thus rejects Peck's argument that discretionary clauses are unenforceable as violations of public policy.

Peck next argues that this court should conduct a *de novo* review of Aetna's determination because 1) Aetna did not notify her of its initial claim decision until 130 days after the claim's submission, rather than within 90 days as required by 29 C.F.R. §

6

2560.503-1(e)(3); and because 2) Aetna decided her appeal 91 days after its

submission, rather than within 60 days as required by 29 C.F.R. § 2560.503-1(h)(4).[3]

Due to Aetna's failure to render timely determinations on Peck's benefit claims, Peck

argues that these claims were "deemed denied," and that the administrator's decision is

not entitled to deference. Pl. Mem. at 3. To support her argument, Peck cites to the

Second Circuit's decision in Nichols v. Prudential Ins. Co. of America, 406 F.3d 98 (2d

Cir. 2005). Pl. Mem. at 2.

The court finds that Nichols lends no support to Peck's contention. Nichols dealt

with a situation where Prudential Insurance Company of America ("Prudential"), the

plan's administrator, did not render a timely decision on plaintiff Nichols' appeal of

Prudential's denial of benefits. Nichols 406 F.3d at 102. Rather than wait until

Prudential decided her appeal, Nichols filed suit. Id. Consequently, Nichols' claim was

deemed denied under 29 C.F.R. § 2560.503-1(h). Id. at 105. The Second Circuit

explained that "a 'deemed denied' claim is not denied by exercise of discretion, but by

operation of law on the 60th (or 120th) day after the appeal is requested." Id. at 109.[4]

As Prudential never rendered an actual decision on Nichols' appeal, the Second Circuit

found that, "even if Prudential was vested with discretion, it made no valid exercise of

that discretion here." Id. Since a court can only defer to an actual decision by the plan

administrator, the Second Circuit essentially found that administrators like Prudential

could not obtain deferential review of claim denials by simply refusing to render timely

---

[3]The 1984 version of these regulations are applicable in this case.

[4]Peck omits the "(or 120th)" portion of this quotation in its brief. The significance of this omission which will become relevant shortly.

7

decisions.  <u>See</u> <u>id.</u>

Unlike Nichols, Peck did not file suit before Aetna rendered a decision on her initial denial and subsequent appeal.  In fact, Peck's suit is premised on the decision that Aetna actually made with respect to her benefits.  As such, Peck's situation is more analogous to the facts of <u>Demirovic v. Building Service 32 B-J Pension Fund</u>, 467 F.3d 208 (2d Cir. 2006).  In that case, plaintiff Demirovic did not file suit immediately upon the administrator's failed to render a timely decision on her initial appeal.  <u>Demirovic</u>, 467 F.3d at 212.  Demirovic instead chose to take an administrative appeal and "then waited for and received a timely decision on her appeal."  <u>Id.</u>  Given this, the Second Circuit concluded, "[t]his eventual decision constitutes a final decision and exercise of the Fund's discretion, to which we must defer."

Even assuming that Aetna's initial termination of Peck's benefits was untimely, its decision on Peck's appeal was not.  Section 2560.503-1(h) provides that a decision on review must be decided within 60 days of the appeal, "unless special circumstances . . . require an extension of time for processing, in which case a decision shall be rendered . . . not later than 120 days after receipt of a request for review."  29 C.F.R. § 2560.503-1(h)(1)(I).  Here, Peck ignores the fact that section 2560.503-1(h) allows for sixty day extensions where special circumstances are present.  Peck also does not address Aetna's submission that Aetna notified Peck on February 28, 2002 that it would needed 45 more days to decide her appeal in order to consider supplemental materials submitted by Peck.  There is no evidence in the record that Peck objected to this extension of time.  When Aetna affirmed the denial of Peck's benefits on April 3, 2002, it was within both the 120 days allowed by the regulation and the forty-five days that

Aetna represented to Peck. Based on these facts, the court finds that Aetna exercised its discretion in denying Peck's appeal, and that this exercise is entitled to deference. The court will therefore evaluate Aetna's denial under the arbitrary and capricious standard.

**B.    Aetna's Interpretation of Peck's "Own Occupation"**

Although the court finds that it must review Aetna's denial of Peck's long-term disability benefits under the arbitrary and capricious standard, the court concludes that Aetna's interpretation of Peck's "own occupation" was arbitrary. As mentioned above, Aetna concluded that Peck should be considered a registered nurse based on the understanding that "own occupation refers to one's own occupation as it exists in the general labor market, not one's specific job with one's employer." Aetna L.R. 56(a)(1) Stat. at ¶ 22. However, the SDP and Policy do not define "own occupation." The first appearance of Aetna's interpretation of that term appeared in its April 3, 2002 denial letter to Peck.

Where a benefits policy does not define the term "own occupation," "the applicable definition of [own] occupation[5] shall be a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties." See Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999) (citing Dawes v. First Unum Life Ins. Co., 851 F.Supp. 118, 122 (S.D.N.Y. 1994) (quotations omitted). Therefore, Peck's "own occupation"

_____

[5]The relevant policy language in Kinstler actually referred to "regular" rather than "own" occupation. However, these terms, as Aetna asserts, are interchangeable. Aetna Mem. at 12 n.8 (citing Peterson v. Continental Cas. Co., 77 F.Supp.2d 420, 430 (S.D.N.Y. 1999).

was not the standard set forth in Aetna's letter denying Peck's appeal, but the standard articulated by the Second Circuit in Kinstler. While Kinstler's definition of "own occupation" is not limited to the participant's particular job, it does require that the administrator take into account "what sort of position is of the same general character as the insured's previous job." Id. at 252-53 (citing Dawes, 851 F.Supp. at 122). This determination necessarily requires consideration of the nature of the institution where the participant was employed. Id. at 253.

Having settled upon its broad definition of "own occupation," Aetna relied on  the Dictionary of Occupation Titles ("DOT") in determining that Peck's own occupation was that of a registered nurse instead of, as Peck asserts, an operating room nurse. Generally, the DOT "groups various jobs into 'occupation' based on their similarities, and thus an 'occupation' in the DOT covers more than one particular job." Dionida v. Reliance Std. Life Ins. Co., 50 F.Supp.2d 934, 940 n. 4 (N.D. Cal. 1999). Aetna also relied on the fact that Peck was capable of sedentary work and on the fact that a labor market survey identified several registered nursing jobs that Peck could physically perform and for which she was qualified. Aetna Mem. at 11. However, there is no evidence that Aetna ever considered the general character of Peck's duties as a North Shore operating room nurse, or the nature of the North Shore facility. See Kinstler, 181 F.3d at 253. In fact, Aetna asserts in its Reply that it need not address such issues because its interpretation of "own occupation" was reasonable, making Peck's submissions concerning the duties of her job as an operating nurse irrelevant. Aetna Reply at 17. Aetna's assertion is without merit.

Peck lists a number of duties that she considers material to her job as an

operating room nurse at Long Shore.  Among these are working up to 10-hour shifts,

spending nearly all of her time on her feet, and assisting everyone in a particular

operating room.  Peck Mem. at 13-14.  Assisting personnel in the operating room

included gathering heavy equipment needed for procedures, checking on patients in the

holding area and wheeling them into the operating room, and standing in place from

one to seven hours in order to provide surgeons with needed instruments.  Id. at 14.

According to Peck, the material duties of her own occupation "were far from sedentary."

Id.  The court agrees.  Whatever one might consider to be the general nature of Peck's

prior job at North Shore, it was not sedentary.

Based on Kinstler, the court finds that Aetna acted arbitrarily and capriciously in

determining that Peck was not totally disabled because she could perform sedentary

nursing jobs as a registered nurse.  Moreover, because Aetna has failed to contradict,

or even acknowledge, Peck's evidence that she could not perform the material duties of

her own occupation as an operating room nurse, the court finds that, as a matter of law,

Peck was totally disabled.  Thus, Aetna wrongfully denied Peck's long-term disability

benefits.  Aetna's Motion for Summary Judgment (Doc. No. 117) is therefore denied,

and Peck's Cross Motion for Summary Judgment (Doc. No. 130) is granted.

## IV.    CONCLUSION

For the foregoing reasons, Aetna's Motion for Summary Judgment (Doc. No.

117) is DENIED, and Peck's Cross Motion for Summary Judgment (Doc. No. 130) is

GRANTED.  Aetna's Motion to Seal (Doc. No. 119) is GRANTED.  Aetna is ordered to

file redacted versions of its pleadings, removing any identifying information, by June 8,

2007.  The clerk is hereby directed to close the case.

11

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 1st day of June, 2007

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge